May it please the court. Plaintiff respectfully submits that there is an issue, a factual issue, which still has to be determined, as to whether there was severe mental impairment, and whether that severe mental impairment affected the plaintiff's ability to comprehend his rights with regard to bringing an action, and whether or not it existed at the time of the various causes of action accrued. Well, counsel, let me ask you this. The affidavits support the conclusion that Mr. Park was unable to care for himself, but how do you distinguish the custodial case, where the court indicated that an inability to care for one's property does not amount to insanity under the statute? I understand, Your Honor, and I think that the custodial case decided by the Guam Supreme Court is a problem. However, the question is not exactly whether he is able to care for his property or not, but rather his understanding of his rights to bring this action. And I respectfully submit that under the circumstances of this particular case, and every case is different, that it's pretty clear that he didn't understand that. I think that is somewhat almost conceded by the defendant on page 21 of their brief, when they said that the affidavits show that the plaintiff acted erratically and was distrustful of others, including family members, that he was paranoid and threatened family members, that he could not focus, that he needed assistance in his daily living arrangements, that he could not understand certain documents he read or operated medical clinic, that he was hospitalized in a psychiatric ward sometime in 2001 for about 30 days, and that he took medication on an outpatient basis after he was released from the hospital. It's our position that I understand what the custodial case says, but it is our position, and we submit that there still is a factual issue that should be submitted to a jury on this case. Doesn't the record show pretty clearly what was the source of his confusion? I'm sorry, Your Honor? Doesn't the record show pretty clearly what the source of his confusion was and what the problem was that he was most concerned about? Well, he was concerned about getting his money transferred, of course. Right. Yes. And, Your Honor, I understand, and so Your Honor is suggesting that maybe if he was so concerned about it, that perhaps he would— I'm not suggesting, I'm just— Yes, I understand. —looking at what the record pretty clearly shows. Yes. So if he was concerned about getting his money transferred, he understood that he wasn't getting his money transferred. Well, I have to think that he understood that he understood he wasn't getting his money transferred. The question, I think, boils down to whether or not he understood, because the question is whether or not he understood his rights besides getting his money transferred, whether he understands his rights suing for damages for that having occurred under the circumstances. Is there some authority for the proposition that a person is mentally incompetent if he doesn't know what rights he has? Well, that's— Is his ignorance of the law a mental condition? Well, it's the statutory rule that if he has a severe mental impairment, that it affects his ability to comprehend his rights. That is what the statute says. Beyond that, I think that we would submit. Thank you very much. Thank you. Respondent? Yes, Your Honor. May it please the Court, Dr. McCulley for Citibank. Yes, Your Honor, we don't believe these affidavits create genuine issue of fact under the test of custodial as to whether or not, when Dr. Park's cause of action accrued between October of 1998 and July of 2001, that he was suffering from—that these affidavits demonstrate that he was suffering from a severe mental impediment that prevented him from understanding his rights and his acts. I think the record does show—the affidavits just in their four corners don't show that. All they show is that he was in a mental hospital for 24 days, undetermined period of time in 2001, and then that his behavior began to change between 1998 and 2000, that, yes, he became distrustful, became unfocused, became unable to operate his medical clinic. But they do show that he was constantly focused on Citibank, and they show that he understood that Citibank had his money. And I think that the point Mr. Trapp is making was addressed in the custodial opinion. With the tests that they had, it's true that when the Supreme Court of Guam, when they analyzed—this was case for first impression to define what insanity would be under the tolling statute. They looked at all the cases, and they really did eliminate the requirement that standing alone, being unable to care for yourself, and having a guardian appointed, that that alone was created a basis to argue insanity, as opposed to some of the other states that have a broader definition. Guam has a narrow definition. Well, let me ask this. If he had produced evidence that he might have been insane sometime during that time, does he have to prove the exact dates he was insane? I think he does. I think he has—perhaps not the day, but he has to prove that he was insane when his causes of action accrued. Yes, he has to prove that. That's the question that Judge Nelson asked you. I'm sorry. If he became insane sometime after the causes of action accrued, would he have to show the dates that he was insane to toll the statute for those dates? No. I don't believe under our law, this is based on old California law, the statute itself is quite specific. You have to be insane when your cause of action accrued, and you have to stay insane throughout the limitation period. Once you become lucid and your insanity goes away, your cause of action accrues. And if you become insane again, it doesn't toll again. Well, would that be a material issue of fact for the jury to decide? Well, I don't think so. I think the law is he has to be insane when his cause of action accrued, and the issue is do these affidavits establish that? And they don't establish that. They don't establish that he was insane under the facts of this case. Those affidavits have to prove that he was insane from October of 1998 through July of 2001, without ever, in fact, beyond that, in order to take up some of the limitation period. But that's when his causes of action accrued, during that period, and that's the law, and it doesn't create an issue of fact as to that. They don't provide any probative evidence. You could lead one to conclude that he didn't understand his rights and actions during that period, the affidavits themselves. But then, really, to go beyond that, you have to look at the cases, the various cases from this circuit, TW Electrical, Nissan versus Fritz. You have to look at the facts. Take the facts as true. Look at those and look at them in the context of what's alleged in the complaint and what the uncontroverted facts, contextual facts that are in the record. And when you do that, you see that Dr. Park, he knew Citibank had his money. He knew he had a right. He understood that he had a right to that money. He took acts, specific express, intentional commercial acts to get that money, and he knew that Citibank wasn't responding in the commercially required way. So he knew all that. He knew that he'd been damaged. He knew that, in fact, that the knowledge of the damages, what he now claims has caused the emotional and financial distress that he had. So just on the basis, basic theory of the case is inconsistent with insanity. If he was insane when he was asking for his money, Citibank, he wouldn't have known what he was asking for, so how could he be damaged when Citibank didn't do what he didn't, you know, didn't give him his money because he didn't even know that he was asking for it? And if Citibank had given him his money, he would have had to say, well, what's this, why are you giving him this money? Because he wouldn't have understood what he was doing. But his basic case is that he did, in fact, understand. And when you go beyond that and you start looking at the undisputed facts, he sends these 13 letters, and they're to different people at Citibank. They have all the account numbers listed with his TCDs, and then they have different accounts in New York or Guam. And then in July, he fills out a very detailed form, a transfer agreement. First, he has to get this from New York. It's faxed to him. And then he fills it out. It's about eight pages, and he lists all the account numbers and where he wants the money to go into his checking accounts. And then he takes that and he gets his sisters-in-law, who are his co-account holders. They sign off on it. Now, right there, they're agreeing that the money can be transferred into his sole control. There's an inference that they've got to think that he can handle it. It's about $700,000. You don't want to go beyond the record, do you? No, I don't. But thank you. Then he takes this to some Korean attorneys and has it notarized in their office. Then he mails it to Citibank. After that, he contacts a New Zealand banker, ABN Amro, and he says, I want to transfer my money to your bank. And here's my account statement, and can you help me transfer money in my Merrill Lynch and Smith Barney to your bank? So that banker communicates with Citibank Guam. After that, he makes contact with a Guam attorney. He tells Citibank he's retained that attorney. And he threatens, he says, if you don't transfer my money, we're going to resolve this through the court. So he's understanding his rights to that extent. And this is in July or August of 2001. It goes on that he goes, Citibank, actually before that, Citibank arranged a procedure for him to identify himself. That was the underlying problem. They didn't know who they were dealing with. And so they sent him to some Citibank in Korea. He took his sisters-in-law, went down there, identified himself. So he's capable of doing that. But, Your Honor, I'm running out of time, and I want to focus on the issue Mr. Trapp said just a little bit. The issue really is he didn't understand his right to file suit. Well, that isn't really the test that Custodio dealt with that. Mrs. Custodio, her attorneys used that as an argument for tolling, that her mental condition didn't incapacitate her to the extent she didn't know she had a lawsuit and she could file it. And the court imposed a much broader test, that generally you have to be capable of understanding your rights and acts. They said she did just because she was alert when she talked to the doctors, and the doctors said she seemed to comprehend what I said. So the Supreme Court of Guam dealt with that by saying, you have an affirmative obligation. And it's standard law. The Supreme Court of the United States has made that conclusion, that a plaintiff has an affirmative obligation. So if she's capable, if Dr. Park is capable of generally understanding his rights and acts, he has an obligation to follow through. When he knows he's been injured, when he knows his rights have been violated, he has an obligation to find out what he should do next, that he should file suit and when he should file it. That's been resolved. That was dealt with in the Custodio case, the Supreme Court of Guam. So if there's no other questions, I submit. Thank you very much. Do you have any rebuttals, Chuck? There you are. Thank you very much. The matter of Park v. City Bank is submitted.
judges: Farris, Nelson D. W., Bea